UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARTIN MEANEY,

                                        Plaintiff,

        v.                                                    3:10-CV-00070

VILLAGE OF JOHNSON CITY and
DENNIS HANNON

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

        Plaintiff, Martin Meaney, brought the instant action against Defendants, Village of

Johnson City (Village) and Dennis Hannon, alleging that: (1) Defendants violated his First

Amendment right to Freedom of Speech and Freedom of Association; (2) "The Village of

Johnson City Rules and Regulations for the Government of the Fire Department" (Rules and

Regulations)[1] are unconstitutional as written and/or as applied to him; and (3) the Village's

actions violated New York Labor Law § 740.  Presently before the Court are Defendants'

motion to dismiss pursuant to Fed. R. Civ. P. 12, Plaintiff's cross-motion pursuant to Fed. R.

Civ. P. 65(a) seeking a preliminary injunction, and Plaintiff's motion for leave to file an

Amended Complaint.

---

[1]The Rules and Regulations contain standards of conduct and disciplinary procedures for
firefighters.

**I.      FACTS**

Plaintiff is a fire captain for the Village of Johnson City Fire Department and the President of the Johnson City Professional Fire Fighters Local 921.  On January 6, 2009, Plaintiff attended a Village Board of Trustees meeting.  At this meeting, Plaintiff read a statement: (1) asserting that Defendant Hannon had "used the Fire Department for his personal hackey-sack;" (2) accusing "Hannon of compromising the safety of Village residents;" and (3) "criticizing Hannon's votes on various Fire Department issues."[2]  On September 11, 2009, while running for mayor, Hannon told the media that the Village was conducting an internal investigation of the Fire Department concerning the destruction of disciplinary records.  Plaintiff was contacted by a reporter and asked to comment on these allegations.  Plaintiff responded stating, "[a]s far as missing documents, we have no information on it.  Again, is this investigation politically motivated on the eve of the primary? It would appear so."  On November 17, 2009, Plaintiff attended another Village Board of Trustees meeting and spoke on several topics, including: (1) the Village's proposal to apply for a Federal Emergency Management Agency "Staffing for Adequate Fire and Emergency Response" grant; (2) the impact of the Village's reductions in manpower at the Village Fire Department, including its impact on response time and the closure of fire stations; and (3) the inadequacy of relying upon the Village of Endicott Fire Department regarding fire protective services.

On December 2, 2009, Defendant Hannon, who had been elected mayor of the Village, disciplined Plaintiff pursuant to the Rules and Regulations on the grounds that

---

[2] As of January 6, 2009, Defendant Hannon served as a Village Trustee.

statements made on January 6, 2009, September 11, 2009, and November 17, 2009 violated

Plaintiff's duties as a firefighter.  Defendant issued four disciplinary charges against Plaintiff

alleging insubordination and violations of the Rules and Regulations.  These charges

resulted in Plaintiff being placed on a 30-day unpaid suspension commencing December 3,

2009.  Misconduct Charge 1 alleges that Plaintiff's statements on Jan. 6, 2009, Sept. 11,

2009 and Nov. 17, 2009 were acts of insubordination.  Misconduct Charge 2 alleges that

Plaintiff's statements on Jan. 6, 2009, Sept. 11, 2009 and Nov. 17, 2009 violated Article 1,

section 1.2.3 of the Rules and Regulations.[3]  Misconduct Charge 3 alleges that Plaintiff's

statements on Jan. 6, 2009, Sept. 11, 2009 and Nov. 17, 2009 violated Article 1, section

1.2.21 of the Rules and Regulations.[4]  Misconduct charge 4 alleges that Plaintiff's Sept. 11,

2009 statement to the media violated Article 1, section 1.3.18 of the Rules and Regulations.[5]

---

[3] Article 1, section 1.2.3 states that "[e]ach member of the Department shall conduct both their professional and private lives in a manner that will reflect favorably upon themselves, the Department, and the Governing Body of the Village of Johnson City, New York."

[4] Article 1, section 1.2.21 states that "[m]embers shall be respectful and polite to superiors, equals, and citizens, and shall be courteous to their subordinates.  Respect shall be shown by members to the Officer ranks at all times, regardless of the individual holding said rank."

[5] Article 1.3.18 originally read that "[m]embers will not address public or other gatherings concerning the work of the Fire Department, nor will they make any statements for publication concerning any plans, policies, or affairs of the administration of the Department unless authorized to do so by the Chief of Fire or his/her designee."

Article 1.3.18 was amended in 2003 to remove the requirement for preauthorization of public comments.  As amended it reads that "The Village of Johnson City and the Johnson City Fire Department recognized the right to Free Speech and Association protected by the First and Fourteenth Amendments. At the same time, the members and the Village recognize the need for order and discipline in an organization like the Johnson City Fire Department. In an attempt to serve both interests, members will not address public or other gatherings concerning the work of the Fire Department nor will they make any statements for publication concerning the policies of the Administration of the Department unless the Chief of the Fire

(continued...)

On December 10, 2009, Mayor Hannon provided Plaintiff with an Amended Notice of Discipline.  This notice added three misconduct charges.  These additional charges are based on Plaintiff's use of release time on December 1, 2009.  On December 1, 2009, Plaintiff was scheduled to work a shift at the same time he was obligated to meet with counsel for the Union to prepare for an arbitration hearing.  Plaintiff alleges that "[i]n accordance with the Collective Bargaining Agreement by and between the Village and the Union, past practice, and the Rules, any Union member or officer was entitled to leave his shift to attend to Union business, including but not limited to preparations for arbitrations, upon the submission of a 'leave slip.'"  Plaintiff completed the required leave slip and arranged for coverage during his absence before leaving the station to meet with the Union attorney.

The first additional charge alleges that on December 1, 2009, without authority or notice to the Commanding Officer or Fire Chief, Plaintiff missed two hours of his shift and wrongly ordered a lieutenant from another station to cover for him, thereby endangering fellow firefighters and the Village citizens.  This was an alleged violation of Article 1, section 1.2.27 (erroneously identified in the Notice as 1.1.27) of the Rules and Regulations.[6]  The

---

[5](...continued)
Department is informed of their intent to do so.  The Department's right to pursue disciplinary action against a member shall not be abridged if such alleged protected activity is undertaken in an offensive or abusive manner and in defiance of the Department's authority.  Nothing in this regulation shall abridge the member's ability to engage in protected activity under the Taylor Law as described in Scotia v. New York State Public Employment Relations Board, 241 A.D.2d. 29, 670 N.Y.S.2d 692 (3d Dep't 1998)."

[6] Article 1, section 1.2.27 states that "[m]embers of the Department are always responsible for the discharge of their duties.  All members carry the responsibility for the safety of the community and their fellow members.  For

(continued...)

second additional charge alleges that Plaintiff's December 1, 2009 absence from his shift violated Article 1, section 1.3.1(d) of the Rules and Regulations.[7]  The third additional charge alleges that Plaintiff's December 1, 2009 absence from his shift violated Article 1, section 1.3.2 of the Rules and Regulations.[8]

Upon receipt of the charges, Plaintiff demanded a hearing "before an impartial hearing officer."  There is an ongoing dispute between Plaintiff and the Village over the method for choosing a hearing officer.[9]  There has not yet been a hearing or any determination on the charges.  Plaintiff's 30-day suspension has expired and he is back at work and receiving full pay.

Plaintiff filed this action on January 20, 2010 alleging that: (1) Defendants violated his First Amendment rights; (2) the Fire Department's Rules and Regulations are unconstitutional insofar as they violate Plaintiff's First Amendment right to free speech; and (3) Defendants violated New York Labor Law § 740.  Defendants filed this motion to dismiss on February 16, 2010.  Plaintiff opposes the motion and moves for a preliminary injunction to

---

[6](...continued)
these reasons, they will be charged with the attentive, faithful and diligent performance of their assigned duties at all times."

[7] Article 1, section 1.3.1(d) states that "[n]o member of the Department shall engage in the following activities: (a) the concerted effort or failure to report for duty; (b) the willful absence from one's position; (c) unauthorized holidays; (d) unauthorized sickness (substantiation of said sickness may be demanded by the Chief after three (3) working shifts of the member ill, from the first reported date); (e) the stoppage of work, or the absence in whole or in part from the full, faithful and proper performance of the duties of employment for the purpose of inducing, influencing, or coercing a change in conditions, compensation, rights, privileges, or obligations of employment within the Department."

[8] Article 1, section 1.3.2 states that "[m]embers shall not leave quarters or fires, or any duty, without prior authorized permission from the Commanding Officer.

[9] This is a matter being litigated in the state courts.

prohibit Defendants from pursuing the current disciplinary charges, instituting further

disciplinary actions, and further enforcing the challenged Rules and Regulations.  Defendant

opposes the preliminary injunction.


## II.        STANDARD OF REVIEW

When ruling on a motion to dismiss, "the court must accept the material facts

alleged in the complaint as true and construe all reasonable inferences in the plaintiff's

favor." Burns v. Trombly, 624 F. Supp.2d 185, 196 (N.D.N.Y. 2008)(citing Hernandez v.

Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)).  "'[A]lthough a court must accept as true all of the

allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and

'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citing Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009)).  Therefore, to survive a motion to dismiss, the plaintiff

must provide "the grounds upon which his claim rests through factual allegations sufficient 'to

raise a right to relief above the speculative level.'" Camarillo v. Carrols Corp., 518 F.3d 153,

156 (2d Cir. 2008) (citations omitted).  Plaintiff's factual allegations must be sufficient to give

the defendant "fair notice of what the claim is and the grounds upon which it rests."

Camarillo, 518 F.3d at 156 (citing Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d

117, 121 (2d Cir. 2007)).

"[W]hether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." Harris, 572 F.3d at 72 (citing Ashcroft, 129 S. Ct. at 1950).  Review is "limited to the

facts asserted within the four corners of the complaint, the documents attached to the

complaint as exhibits, and any documents incorporated in the complaint by reference."
Medtech Prods. v. Ranir, LLC, 596 F. Supp.2d 778, 802 (S.D.N.Y. 2008) (citing McCarthy v.
Dun & Bradstreet Corp., 482 F.3d 184, 190 (2d Cir. 2007)); see Rothman v. Gregor, 220
F.3d 81, 88 (2d Cir. 2000)(citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)) (the court
may review documents integral to the Complaint upon which the plaintiff relied in drafting his
pleadings, as well as any documents attached to the Complaint as exhibits and any
statements or documents incorporated into the Complaint by reference.).


**III.      DISCUSSION**

    **a.      Defendants' Motion to Dismiss**

    Defendants move to dismiss on the grounds that: (1) the action is not ripe for
review; and (2) Plaintiff's Labor Law § 740 claim is insufficiently plead.  The Court will
address these claims seriatim.

    **1.      Whether the Action is Ripe for Review**

    Defendants argue that Plaintiff's suit is not ripe for review because the disciplinary
proceedings against Plaintiff are still pending.  They contend the "Court will be in a much
better position to review defendants' alleged unlawful conduct once there has been a final
determination on the charges."  Plaintiff counters that the case is ripe for review because the
"constitutional issues [he] seeks to adjudicate question: (1) whether the bringing of the
disciplinary charges in the first place was unlawful retaliation for the exercise of his
constitutional rights; and (2) whether the Rules, either on their face or as applied to him, are
unconstitutional."  Plaintiff contends that there is "no need for further adjudication in the
disciplinary hearing to answer these questions."

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." <u>New York Civil Liberties Union v. Grandeau</u>, 528 F.3d 122, 130 (2d Cir. 2008) (quoting <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 583 U.S. 803, 808 (2003) (internal quotation marks omitted)).  Defendants' argument is not based on the Article III Case or Controversy Clause, but instead relies on the judicially created doctrine of prudential ripeness.  Prudential ripeness is a doctrine of judicial prudence that constitutes an exception to the usual rule that where jurisdiction exists a Federal Court must exercise it.  <u>See</u> <u>Grandeau</u>, 528 F.3d at 131.  Prudential ripeness looks to whether "the case will be *better* decided later" and whether "the parties' constitutional rights will be undermined by the delay.  <u>Id</u>.  The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect . . . agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148-49 (1967), *(overruled on other grounds,* <u>Califano v. Sanders</u>, 430 U.S. 99, 105 (1977)).

The question determining whether a case is prudentially ripe is "whether the alleged policy at this stage is sufficiently definite and clear to permit sound review by this Court" of Plaintiff's allegations.  <u>Grandeau</u>, 528 F.3d at 131.   "To determine whether a challenge to administrative action is ripe for judicial review, [there is a] two step inquiry, 'requiring [the Court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" <u>Id</u> at 131-132 (quoting <u>Abbott Labs</u>, 387 U.S. at 149).  Defendants argue in this case, "the issues are not fit for judicial decision, and plaintiff will not suffer hardship if judicial review is withheld."

### a.  Fitness for Judicial Review

Defendants argue that the case is not fit for adjudication because "[a]t this point, no one knows how the disciplinary proceedings will play out."  They maintain that "[t]he issues in this lawsuit will be vastly different depending on whether plaintiff is acquitted or found guilty."  Specifically, they argue, if Plaintiff is found guilty he may receive additional fines, penalties, and be terminated but if Plaintiff is found not guilty he will be given his back pay and suffer no additional penalties.  Plaintiff responds that "there is no lingering question about how the defendants will seek to apply the challenged disciplinary rules; they have already done so" and in doing so unlawfully retaliated against protected First Amendment speech by applying facially unconstitutional rules and regulations.  He argues that the outcome of the disciplinary hearing is irrelevant because "[e]ither the defendants, by leveling the charges in the first place, acted with retaliatory motive or they did not' and '[e]ither the Rules are or are not constitutionally acceptable."

"[T]he 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur."  Id. at 132 (quoting Simmonds v. I.N.S., 326 F.3d 351, 359 (2d Cir. 2003) (internal quotation marks omitted)).  "A claim is not ripe where it is directed 'at possibilities and proposals only, not at a concrete plan which has been formally promulgated and brought into operation.'"  Clear Channel Outdoor, Inc. v. City of New York, 608 F. Supp.2d 477, 505 (S.D.N.Y. 2009) (quoting Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989)).  "The claim may also fail for ripeness when a plaintiff has not exhausted administrative remedies and judicial review would be benefitted by waiting for the agency's views on how best to interpret the agency's regulation."  Id.  "Conversely, an issue may be ripe where it 'would not benefit from any further factual development and when

the court would be in no better position to adjudicate the issues in the future than it is now.'" Id. (quoting Grandeau, 528 F.3d 122, 132 (2d Cir. 2008) (citations omitted)).  Additionally, the fitness analysis requires consideration of a variety of pragmatic factors including: (1) whether the agency's actions or inactions challenged in the lawsuit are 'final; (2) whether the issues presented for review are primarily legal as opposed to factual in nature; and (3) whether administrative remedies have been exhausted at least to the extent that an adequate factual record has been established.  Id.; see Seafarers Int'l Union v. United States Coast Guard, 736 F.2d 19, 26 (2d Cir. 1984).

In a factually similar case, Marchi v. Board of Cooperative Education Services of Albany, 173 F.3d 469 (2d Cir. 1999), the plaintiff, a teacher, sued his school district raising facial and as-applied First Amendment challenges to a directive requiring him to refrain from using religion as part of his instructional program.  The plaintiff "challenge[d] all applications of the directive to his off-campus communications with students on matters unrelated to the school curriculum."  Id. at 478.  The Second Circuit found that the directive could have been applied to a variety of circumstances, all hypothetical at this point, "some of which may be regulated constitutionally and other of which may not be."  Id.  The Court held that:

> [s]ince BOCES [had] not threatened to apply the directive to any of Marchi's off-campus expressive activities, a court entertaining Marchi's challenge would be forced to guess at how BOCES might apply the directive and to pronounce on the validity all numerous possible applications of the directive, all highly fact specific and, as of yet hypothetical.  Such an open-ended and indefinite challenge is not well suited to judicial decision.

Id.

In this case, Plaintiff has three separate claims stemming from Defendants' disciplinary charges; a retaliation claim, a claim that the Rules and Regulations are

unconstitutional on their face, and a claim that the Rules and Regulations are unconstitutional as applied to him.  The outcome of the disciplinary proceedings are irrelevant to all of these claims because even if he is found guilty and receives additional penalties the legal issues at this point are sufficiently defined and Plaintiff has suffered damages.  Unlike in Marchi, the Court does not have to guess as to the application of the Rules and Regulations.  The Rules and Regulations have already been applied to specific factual situations.  Plaintiff was suspended and charged with the violation of specific Rules and Regulations.  A disciplinary proceeding would not provide the Court with any additional facts or statutory interpretations because the alleged constitutional violation has already taken place.  Furthermore, the Court can look to the challenged Rules and Regulations and determine, on their face, whether they are constitutional; the Court needs no further factual development.  See Clear Channel Outdoor, Inc., 608 F. Supp.2d at 506.  The Court is faced with the legal question of whether the application of the Rules and Regulations violated Plaintiff's First Amendment rights and whether the Rules and Regulations are constitutional.

Similarly, the outcome of the disciplinary proceeding is irrelevant to Plaintiff's First Amendment retaliation claim.  Plaintiff's Complaint alleges that Defendants retaliated against Plaintiff because of Plaintiff's statements against Defendants.  A disciplinary hearing would not provide the Court with additional facts because the alleged constitutional harm was committed at the time the disciplinary charges and suspension were issued.  Accordingly, Plaintiff's claims are fit for judicial review.

### b.  Hardship to the Parties

"The second step in our ripeness analysis is 'whether and to what extent the parties will endure hardship if decision is withheld.'" Grandeau, 528 F.3d at 134 (quoting Simmonds,

326 F.3d at 359).  Defendants argue that Plaintiff will suffer no "significant hardship if the Court declines to review the case until such time as there is a final determination on the charges" because he is already back to work and "if acquitted of the charges, . . . will receive back pay."  Plaintiff maintains, however, that he "will suffer clear hardship if his claims are not adjudicated" in the form of a chilling effect on his speech.  Defendants respond that Plaintiff did not allege a chilling effect in his Complaint and therefore "cannot now create new allegations in his opposition to defeat defendants' motion to dismiss."  Furthermore, Defendants point out that Plaintiff's speech has not been chilled because just recently he filed an Improper Practice Charge against Defendants with the New York Public Employment Relations Board.

"The mere possibility of hardship is not enough to make a case ripe; instead, the courts must ask 'whether the challenged action creates a direct and immediate dilemma for the parties.'" Clear Channel Outdoor Inc., 608 F. Supp.2d at 505 (quoting Grandeau, 528 F.3d at 134).  "A plaintiff must show either prosecution pursuant to the challenged provision or that a sufficiently real and immediate threat of prosecution exists."  Marchi, 173 F.3d at 478.  Additionally, "[c]ourts use a 'somewhat relaxed' hardship analysis where the controversy involves a facial First Amendment challenge."  Clear Channel Outdoor Inc., 608 F. Supp.2d at 505; see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002); see also New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499-1500 (10th Cir. 1995) ("The primary reasons for relaxing the ripeness analysis in this context is the chilling effect that potentially unconstitutional burdens on free speech may occasion."); Sanger v. Reno, 966 F. Supp. 151, 161 (E.D.N.Y.1997) ("In the context of a First Amendment facial challenge to the validity of a statute, reasonable predictability of

enforcement or threats of enforcement even where enforcement is not impending are sometimes enough to ripen a claim . . . However, courts have uniformly insisted, even in the First Amendment context, that there must still exist some credible fear of enforcement.") (citations omitted).

In this case, Plaintiff challenges the Rules and Regulations pursuant to which he faces disciplinary charges.  Unlike in <u>Marchi</u>, where hardship was not demonstrated because the challenged directive had not yet been applied to the plaintiff's off-campus activities, here Plaintiff was already disciplined pursuant to the challenged Rules and Regulations.  <u>See</u> <u>Marchi</u>, 173 F.3d at 479.  Accordingly, Plaintiff has demonstrated hardship and the case is prudentially ripe for review.  Defendants' motion to dismiss for lack of prudential ripeness is denied.

### 2.    Whether Plaintiff has sufficiently pled a Labor Law § 740 Claim

Defendants argue that Plaintiff has not sufficiently pled a Labor Law § 740 claim because Plaintiff has not alleged any facts to show an actual violation of a law, rule, or regulation or alleged any conduct creating a substantial or specific danger to the public.

Labor Law § 740 states that:

An employer shall not take any retaliatory personnel action against an employee because such employee ... (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud;....

"To prove [a] claim under [this section], Plaintiff must establish that the retaliatory action [was suffered] because he (a) disclosed to a supervisor or to a public body (b) an

activity, policy or practice of the employer that is in violation of the law, rule or regulation (c) which violation creates and presents a substantial and specific danger to the public health or safety."  Calabro v. Nassau University Medical Center, 424 F. Supp.2d 465, 475 (E.D.N.Y. 2006).  Plaintiff contends he has met this standard.  Defendants argue that Plaintiff has failed to allege a violation of a law, rule, or regulation or a specific danger to the public.

"Section 740 'is triggered only by a violation of a law, rule, or regulation that creates and presents a substantial and specific danger to the public health and safety.'" Calabro, 424 F. Supp.2d at 475 (quoting Remba v. Fed'n Empl. & Guidance Service, 76 N.Y.2d 801 (1990)).  "This violation must be an actual violation, and an employee's good faith, reasonable believe that a violation occurred is insufficient."  Id.; See Nadkarni v. North Shore-Long Island Jewish Health Sys., 21 A.D.3d 354 (2d Dep't 2005).

Plaintiff's Complaint alleges that his "statements to the Village Board *included* statements regarding the Village's *actual* or potential violation of applicable regulations of the Occupational Health and Safety Administration and National Fire Protection Association standards."  See Docket No. 1 paragraph 65 (emphasis added).  The Village Board Meeting minutes, attached to the Complaint, include Plaintiff's prepared statement to the Village Board accusing Defendants of "seeking [to have] the minimum shift strength of the Fire Department be eliminated even though the safety of the Village Residents may be compromised."  See Docket No. 1 Exhibit B.  Plaintiff's Complaint states that Plaintiff reported an *actual* violation and the attached statement states the violation compromised the safety of Village residents.

Defendants argue that § 740 requires the Plaintiff specifically identify the rule or law violated.  Plaintiff seeks leave to amend his Complaint to "assert that his statements to the Village Board were complaints [exposing] violations of 29 C.F.R. § 1910.134(g)(4) and NFPA 1500 and 1710."  "Leave to amend should be 'freely given'" unless such amendment would be futile or there would be prejudice to the other party."  Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11 (2d Cir. 1997) (quoting Fed. R. Civ. P. 15(a) and citing Forman v. Davis, 371 U.S. 178, 182 (1962)).  Because allowing Plaintiff to amend his Complaint at this stage in the litigation would not prejudice either party, Plaintiff's motion to amend is granted.  Plaintiff adequately pleads a violation of New York Labor Law § 740 in the Amended Complaint, and accordingly Defendants' motion to dismiss is denied.

### b.   Plaintiff's Cross-Motion for Preliminary Injunction

Defendants oppose Plaintiff's motion seeking a  preliminary injunction on the grounds that: (1) Plaintiff did not comply with local rules; (2) the Younger abstention doctrine requires the Court to abstain from taking jurisdiction; and (3) Plaintiff cannot establish irreparable harm or the likelihood of success on the merits.  The Court will address these claims seriatim.

### 1.   Whether Plaintiff Complied with Local Rules

"Plaintiff cross-moves for a preliminary injunction [to prohibit] Defendants from pursuing the current disciplinary charges, instituting further disciplinary actions, or further enforcing the challenged Rules to prevent [Plaintiff] or other firefighters from speaking out on matters of public concern."  Defendants argue that Plaintiff is not entitled to a Preliminary Injunction because he failed to comply with Local Rules 65.1, 7.1(f) and 7.1(b)(2).  They

maintain that, pursuant to these rules, Plaintiff was required to request a court conference so that the parties could attempt to come to a mutually satisfactory resolution.  Plaintiff did not request a conference.  Plaintiff argues that Defendants' interpretation of the Local Rules is incorrect.  Plaintiff maintains that:

> Local Rule 65.1, "Injunctions," simply refers to Local Rule 7.1(f), "Temporary Restraining Order," which concerns application for temporary restraining orders brought by on order to show cause. Local Rule 7.1(f) provides that "motions for injunctive relief, other than those brought on by Order to Show Cause," are governed by Local Rule 7.1(b)(2) . . . Local Rule 7.1(b)(2) states that a "court conference is a prerequisite to filing a non-dispositive motion *before the assigned Magistrate Judge*." (emphasis added). The Rules do not require a conference prior to the filing of a preliminary injunction motion (or, as here, a cross-motion) that is made to the District Court Judge.

Alternatively, Plaintiff argues that the requirements of Local Rule 7.1(b)(2) are inapplicable because a preliminary injunction motion is considered "dispositive."  The Court agrees that a motion for a preliminary injunction is dispositive and therefore, Plaintiff was not required to request a court conference before filing the instant cross-motion. See Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002) (motion for preliminary injunction is "dispositive"); Odom v. Senkowski, 1997 U.S. Dist. LEXIS 11780 (N.D.N.Y. 1997)(same).

### 2.    **Younger Abstention**

Defendants next argue that the Court should deny Plaintiff's cross-motion for a preliminary injunction on the basis of the Younger abstention doctrine.  Younger v. Harris, 401 U.S. 37 (1971).  The Younger abstention doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve ongoing state proceedings. Younger abstention is required where three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state

proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.  Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191 (2d Cir. 2002) (citing Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001)).

Defendants argue that all three conditions are met.  They allege that both the ongoing disciplinary proceeding and the improper practice charge filed with the public employment relations board are ongoing state proceedings which afford the Plaintiff an opportunity to be heard on his constitutional claims.  Plaintiff maintains that "there is no 'on-going' state proceeding that 'raises the same issues' as this case."  He maintains that the constitutionality of the rules and regulations and the motives of the Defendants in bringing the charges are not issues raised in the disciplinary matter.  He contends that the disciplinary hearing will only address whether or not his conduct violated the cited rules.

The Court finds that the Defendant has not established that an important state interest is implicated in the underlying state proceedings.  See Phillip Morris, Inc. v. Blumenthal, 123 F.3d 103 (2d.Cir 1997) ("The burden is on the state to establish that an important state interest in implicated.").  "When determining, for purposes of abstention, whether an important state interest is implicated by the pending state proceeding, a federal court should not 'look narrowly' to the state's 'interest in the outcome of the particular case,' but should instead look to 'the importance of the generic proceedings to the State.'" Scheiner v. New York City Health and Hospitals Corp., 1999 WL 771383, at *5 (S.D.N.Y. 1999) (finding that "the state proceeding, when distilled to its generic content, is nothing more than a routine labor dispute over the terms of an ordinary collective bargaining agreement.") (quoting New Orleans Pub. Sery., Inc., v. Council of New Orleans, 491 U.S. 350, 365

(1989)); see also Phillip Morris, 123 F.3d at 106 (holding that "[t]he proceeding . . . does not "concern[ ] the central sovereign functions of state government" and thus does not implicate the federal considerations that animate Younger abstention.).  In this case, the dispute involves a disciplinary proceeding of a local fire captain alleged to have violated local rules. This dispute does not implicate an important state interest requiring Younger abstention.

### 3.    Whether Plaintiff is Entitled to Preliminary Injunction

The Court will now turn to the substance of Plaintiff's motion for a preliminary injunction.  Defendants argue that Plaintiff is not entitled to injunctive relief because he cannot establish irreparable harm or the likelihood of success on the merits.

"The standards for a preliminary injunction are well settled."  People of New York ex rel. Spitzer v. County of Delaware, 82 F. Supp.2d 12, 15 (N.D.N.Y. 2000).  A party seeking such relief must establish two things.  First, the party must establish the likelihood of irreparable harm if the requested relief is denied.  Pacheco Ross Architects, P.C. v. Mitchell Associates Architects, 2009 WL 1606066, at *2 (N.D.N.Y. June 8, 2009).  Second, the party must establish either (a) a likelihood of success on the merits of its case, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. Id.  Where, as here, the injunction sought will: (1) "alter, rather than maintain, the status quo"; or (2) "will provide the movant with substantially all the relief sought", a higher standard applies and the "moving party must make a clear or substantial showing of a likelihood of success."   Rubin v. Corning-Painted Post,190 F. Supp.2d 541, 542 (W.D.N.Y. 2002) (quoting Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996)) (internal citations omitted).

In the Second Circuit "there is no hard and fast rule . . .  that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it."  Maryland Cas. Co. v. Realty Advisory Bd. of Labor Relations, 107 F.3d 979, 984 (2d Cir. 1997) (quoting Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 259 (2d Cir. 1989)).  "Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute."  See id.

### a.  Plaintiff Seeks to Prohibit Defendants from Pursuing the Current Disciplinary Charges

#### (1)   Irreparable Harm

The showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction."  Bell & Howell v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir. 1983); Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990); Frank Brunckhorst Co. v. G. Heileman Brewing Co., Inc., 875 F. Supp. 966, 974 (E.D.N.Y. 1994); NAACP v. Town of East Haven, 70 F.3d 219, 224 (2d Cir. 1995).  The mere possibility of harm is not sufficient: the harm must be imminent and the movant must show he is likely to suffer irreparable harm if equitable relief is denied. JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990); In re Feit & Drexler, Inc., 760 F.2d 406, 415 (2d Cir. 1985); Borey v. National Union Fire Ins. Co., 934 F.2d 30, 34 (2d Cir. 1991).

In this case, it is undisputed that Plaintiff has been reinstated to his position as a fire captain and is receiving full pay.  It is also undisputed that if Plaintiff is found not guilty at the disciplinary proceeding he will receive full back pay and suffer no further penalties and if

he is found guilty he could potentially collect increased damages.  Furthermore, the disciplinary proceeding will not preclude Plaintiff from receiving damages in this Court should he prevail on his First Amendment retaliation claim.  Finally, allowing the disciplinary proceeding to continue does not further curtail Plaintiff's current speech because any potential chilling of speech would arise from the fear of additional disciplinary charges and not from allowing the disciplinary hearing to proceed. Accordingly, the Court finds that Plaintiff will suffer not irreparable harm if the disciplinary proceedings are not suspended pending the outcome of this case.

### b.  Plaintiff Seeks to Prohibit Future Disciplinary Charges

#### (1)  Irreparable Harm

Plaintiff alleges that the possibility of future enforcement of the Rules and Regulations has resulted in a chilling effect on his speech and on the speech of other firefighters.  Defendants argues that Plaintiff has not demonstrated that he will suffer irreparable damage.  Defendants point to the fact that Plaintiff did not allege chilled speech in his Complaint as evidence that the chilled speech is not actual or imminent.  See Rodriguez v. Debuono, 175 F.3d 227, 234 (2d Cir. 1997) (finding that "[r]egarding irreparable harm, plaintiff must demonstrate that the injury he will suffer is actual and imminent, not remote or speculative.).

"The Supreme Court has long held that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" New York Civil Liberties Union v. New York City Transit Authority, 2009 WL 4980408, at *15 (S.D.N.Y. Dec.

23, 2009) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976); accord Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996)).  The Second Circuit, however, has held that, "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed" but "where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights."  Bronx Household of Faith v. Board of Education of City of New York, 331 F.3d 342, 349-350 (2d Cir. 2003).  In Laird v. Tatum, 408 U.S. 1 (1972), the Supreme Court instructed, "that to establish a cognizable claim founded on the chilling of First Amendment rights, a party must articulate a 'specific present objective harm or a threat of specific future harm."  Id. at 350.

In this case, the Rules and Regulations at issue do not directly limit speech.  Rule 1.2.3 reads:

> Each member of the Department shall conduct both their professional and private lives in a manner that will reflect favorably upon themselves, the Department and the Governing Body of the Village of Johnson City, New York.

Rule 1.3.18 reads:

> Members shall be respectful and polite to superiors, equals, and citizens, and shall be courteous to their subordinates. Respect shall be shown by members to the Officer ranks at all times, regardless of the individual holding said rank.

As amended,[10] Rule 1.3.18 reads:

> The Village of Johnson City and the Johnson City Fire Department recognized the right to Free Speech and Association protected by the First and Fourteenth

---

[10]  Plaintiff concedes that Rule 1.3.18 was modified in 2003.

> Amendments. At the same time, the members and the Village recognize the need for order and discipline in an organization like the Johnson City Fire Department.  In an attempt to serve both interests, members will not address public or other gatherings concerning the work of the Fire Department nor will they make any statements for publication concerning the policies of the Administration of the Department unless the Chief of the Fire Department is informed of their intent to do so. The Department's right to pursue disciplinary action against a member shall not be abridged if such alleged protected activity is undertaken in an offensive or abusive manner and in defiance of the Department's authority.  Nothing in this regulation shall abridge the member's ability to engage in protected activity under the Taylor Law as described in <u>Scotia v. new York State Public Employment Relations Board</u>, 241 A.D.2d. 29, 670 N.Y.S.2d 692 (3d Dep't 1998).

Because the rules do not directly limit speech, Plaintiff must establish a causal link between the injunction sought and the alleged injury.

These rules are analogous to the rules challenged in <u>Latino Officers Ass'n v. Safir</u>, 170 F.3d 167, 171 (2d Cir. 1999).  In that case, plaintiffs challenged a police department's requirement that all officers notify the department of their intention to speak before a governmental agency or a private organization about department policy, and that they provide an after-the-fact summary of their comments.  <u>Latino Officers Ass'n</u>, 170 F.3d at 171.  The court explained that while this sort of rule "may make some officers more reluctant to speak than they would be if they did not have to bring their speech to the Department's attention . . . this kind of conjectural chill is insufficient to establish real and imminent irreparable harm."  Similarly, in this case, Plaintiff has alleged only that Defendants may utilize these rules sometime in the future to bring additional disciplinary charges which may violate protected speech.  Because the rules themselves do not directly limit speech and Plaintiff has not alleged any particular threats or instances where the Defendants are seeking to punish additional speech, Plaintiff has not demonstrated imminent harm.  See <u>Levin v. Harleston</u>, 966 F.2d 85, 90 ("The burden nevertheless remains on the moving party to

demonstrate the need for injunctive relief . . . This requires a showing of irreparable harm, . . . a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.") (internal quotes omitted).

Accordingly, as Plaintiff has failed to demonstrate the threat of imminent harm his motion for a preliminary injunction is denied.


**IV.**      **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss [Docket No. 4] and Plaintiff's motion for Preliminary Injunction [Docket No. 6] are DENIED.  Plaintiff's motion to amend the Complaint is GRANTED.


IT IS SO ORDERED

Dated:April 21, 2010



Thomas J. McAvoy
Senior, U.S. District Judge